UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DENNIS J. MURRAY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:20-CV-398-JEM |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Dennis J. Murray on November 4, 2020, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed September 7, 2021. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 19, 2021, the Commissioner filed a response, and Plaintiff filed his reply on November 17, 2021. For the foregoing reasons, the Court remands the Commissioner's decision.

**I.      Background**

On April 4, 2018, Plaintiff filed an application for benefits alleging that he became disabled on December 15, 2017. Plaintiff's application was denied initially and upon consideration. On November 26, 2019, Administrative Law Judge ("ALJ") Edward Kristof held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On January 29, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since December

15, 2017, the alleged onset date.

3. The claimant has the following severe impairments: disorders of the lumbar spine including stenosis, degenerative disc disease, radiculopathy, sacroiliitis and post laminectomy syndrome, piriformis syndrome and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can stand/walk for four hours in an eight-hour workday; sit for four hours in an eight-hour workday; cannot sit/stand for longer than 15 minutes at one time before needing to change positions but he is able to remain at the workstation when changing between the sitting and standing positions; occasional use of foot controls with the left lower extremity; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights; no operation of a motorized vehicle and no concentrated exposure to vibration.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 45-49 on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2017 through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final

decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

III. Analysis

Plaintiff argues that the ALJ erred in his determination of the RFC, his evaluation of Plaintiff's treating physician, and his assessment of Plaintiff's subjective allegations, that the Appeals Counsel failed to evaluate new and material evidence, and the appointment of the commissioner is constitutionally defective. The Commissioner argues that the ALJ's decision was supported by substantial evidence, the new evidence submitted to the Appeals Council was not material to the relevant time period, and the argument about the constitutional defects in the Social Security Agency do not entitle Plaintiff to a rehearing on his claim.

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's treating physician. The ALJ was required to analyze a number of factors when determining the weight to give to medical opinions in the record and to thoroughly explain the weight given the opinions. The most important factors are the relevance of the medical evidence and explanations used to support the medical opinions and the consistency of the medical evidence with other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(b)(2), (c)(1)-(2); 416.920c(b)(2), (c)(1)-(2). Plaintiff's treating physician completed a medical source statement describing Plaintiff's diagnoses, including a diagnosis of depression. The ALJ concluded that "although Dr Pithadia noted depression in this medical opinion, the representative stated at the hearing that there was no evidence of depression." AR 30. That is not, however, an accurate representation of the hearing. The ALJ asked Plaintiff's attorney: "Any exam findings from Dr. [Pithadia] regarding depression? He says depression is an issue in [] the opinion but I didn't see any contemporaneous findings regarding that," and the attorney answered that she "did not see anything." AR 64. Plaintiff's attorney was not stating that Plaintiff had never suffered from any depressive symptoms, but that there are not other contemporaneous medical records besides Dr. Pithadia's that also diagnosed Plaintiff with depression. Plaintiff's failure to seek a second opinion or additional treatment for his depression, especially when he testified that he did not have money to pay other physicians and Dr. Pithadia was willing to treat him without expecting payment, does not mean that he did not suffer from depression, and the misstatement of the record means the Court is unable to rely on the ALJ's analysis of the medical source statement.

Similarly, when the ALJ said that Dr. Pithadia "refers to pain frequently interfering with attention and concentration and also to drowsiness as a medication side effect. Any of those in the contemporaneous records?" the attorney answered no. AR 64. The ALJ explained that he found the opinion of plaintiff's treating physical therapist "not persuasive" because he "opined that the

5

claimant has medication side effects of dizziness and drowsiness, but . . . the representative denied this being found in the medical evidence at the hearing." AR 30. In other words, the ALJ said that he discounted the opinion of the physical therapist because of the attorney's answer to a question about Dr. Pithadia. Although the exchange also raises concerns about the attorney's preparation for the hearing, there is a complete lack of logic in the ALJ's analysis. It appears that the ALJ expanded an apparent misunderstanding of the attorney's response as a reason to discount the opinions of both treating providers in the record. The ALJ cannot trace the logical bridge from the evidence to the ALJ's decision to discount the opinions of both treating providers in the record. *O'Connor-Spinner*, 627 F.3d at 618. The Court notes that both medical providers described medication side effects, and Plaintiff also testified that he suffered from fatigue because of his medication, the type of consistency that is important in determining the persuasiveness of the medical opinions. 20 C.F.R. §§ 404.1520c(b)(2), (c)(1); 416.920c(b)(2), (c)(1).

Similar logical concerns extend to the RFC. Plaintiff argues that the ALJ did not explain his failure to include a need to rest during the day into the RFC. The ALJ noted that Plaintiff testified that he naps during the day and that both Dr. Pithadia and the physical therapist included a need for Plaintiff to take a rest break during the day, but he did not include any rest period or time off-task in the RFC without explanation. At the hearing, the VE was asked about an employee who needed a one hour rest break per day in addition to typical meal breaks, and testified that an additional rest break would be "work-preclusive" and that "an employer will typically tolerate up to 5 percent of the workday off task which equates to 8 minutes per hour." AR 71-72. The ALJ's failure to explain why no rest time is included in the RFC leaves the Court unable to determine how he reached his conclusions and leads to concern that he only considered evidence that supported his decision. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (holding that ALJs must "consider all relevant

medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Furthermore, the ALJ must take into account Plaintiff's testimony about his limitations, including things like the need for naps, as well as the medical opinions. SSR 96-8p 1996 WL 374184, at *6-7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved [and] . . .[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). This case must be remanded for a new determination of Plaintiff's RFC, including an explanation of how the evidence supports the conclusion, and an appropriate analysis of the opinions of Plaintiff's treating sources in accordance with the applicable regulations.

Plaintiff also argues that the Appeals Council erred in failing to consider MRIs he submitted. *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) ("The Social Security Administration regulations require that body [the Appeals Council] to evaluate 'new and material evidence' in determining whether a case qualifies for review.") (quoting 20 C.F.R. §§ 404.970(b), 416.1470). On remand, the new evidence should be considered, so the Court need not determine whether it was material.

Similarly, the Court need not address the merits of Plaintiff's constitutional argument. He requests that the case be remanded to a new ALJ to cure the separation of powers concerns he raises in his brief. The case is being remanded, as he requested, so, without finding that there are any, the Court notes that any defects will be cured.

On remand, the ALJ is directed to consider all of the medical evidence and opinions in the

record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

## VI.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion. Based on the Court's review of the ALJ's decision and the hearing transcript, the Court **RECOMMENDS** that a new ALJ be chosen.

SO ORDERED this 25th day of February, 2022.

    _s/ John E. Martin_
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record